1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                             San Francisco Division

11    BLUESTONE INVESTMENT INC., et al.,        Case No. 25-cv-05396-LB

12             Plaintiffs,                      **ORDER GRANTING IN PART
                                                MOTIONS TO DISMISS**
13        v.
                                                Re: ECF Nos. 30, 38, 43
14    QIZHONG HU, et al.,

15             Defendants.

16

17                              **INTRODUCTION**

18        This action arises from an alleged fraudulent investment scheme centered on a purported

19    partnership between Patten University and Stanford University, referred to as the "Patten-Stanford

20    United College Scheme." Plaintiffs Bluestone Investment Inc., World Education Association, Inc.,

21    Irene Chan, and Lishan Zhang claim that they were induced to invest over $35 million through

22    forged documents, misrepresentations, and fictitious entities orchestrated by Defendant Qizhong Hu

23    (Hu or QZ) and aided by the other defendants. The claims are securities fraud, in violation of

24    federal and state law, fraud (including on theories of aiding and abetting and conspiracy), breach of

25    contract, receiving stolen property, conversion, and negligence.

26        Three sets of defendants have moved to dismiss. The QZ defendants (Hu/QZ, Patten Holding

27    LLC, QZ's mother Jingling Li, and Patten University vice president and board representative Scott

28    Ethan Victor) move to dismiss the claims of the corporate plaintiffs for lack of standing and

ORDER – No. 25-cv-05396-LB

United States District Court
Northern District of California

1    capacity to sue, the fraud claims under Rule 9(b), the claims against QZ as barred by insufficient

2    allegations of alter-ego liability, the theft and conversion claims as barred by the economic-loss

3    doctrine, and claims against Victor for lack of service. William Sawyer, an adjunct vice dean of

4    Patten University and managing partner at Patten Holding, moves to dismiss the fraud claims

5    against him on similar grounds. JPMorgan Chase Bank and account manager Andrew Babes move

6    to dismiss for failure to state claims of negligence and fraud.

7        The court dismisses the claims against Victor for insufficient service of process but otherwise

8    denies the motions to dismiss by the QZ defendants and Sawyer. The Chase defendants' motion is

9    granted: the negligence claim is dismissed without prejudice to asserting a contract claim, and the

10   fraud claims are dismissed without prejudice because the plaintiffs do not allege the defendants'

11   knowledge of the fraud.

**STATEMENT**

12

13   **1.    The Investment Scheme**

14       Defendant Qizhong Yu (referred to as QZ), the managing partner of defendant Patten Holding

15   LLC (alleged to be his alter ego), solicited over $35 million in investments from plaintiffs Chan

16   and Zhang in 2021, promising a joint venture between defendant Patten University and Stanford

17   University. Zhang and Chan formed plaintiffs Bluestone and World Education Association, both

18   Delaware corporations with principal places of business in California, as vehicles to facilitate their

19   investments.[1] QZ provided them forged financial statements, valuations, and agreements

20   purporting to show Patten University's viability and Stanford's involvement. As a result, in July

21   2021, the plaintiffs executed stock purchase agreements (which included the defendants' false

22   representations about the accuracy of information that they provided) and transferred funds to

23   accounts controlled by the defendants, ultimately resulting in the loss of their investment.[2] After

24

25

26

27   [1] Compl. – ECF No. 1 at 2 (¶ 1), 3–4 (¶¶ 6–10). Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

28   [2] *Id.* at 8–34 (¶¶ 24–72).

ORDER – No. 25-cv-05396-LB                    2

1    the execution of the agreements, the defendants provided more false documents in furtherance of

2    the scheme, including a falsified agreement with Stanford (the Stanford Long-Form Agreement).[3]

3         Defendant William Sawyer, an adjunct vice dean at Patten University, managing partner of

4    Patten Holding, and a CPA, participated in Zoom meetings to discuss the investments and stock-

5    purchase agreements, including a one-on-one meeting with Chan about the financial details,

6    signed the stock agreements on behalf of Patten University, and signed the purported agreement

7    between Patten and Stanford.[4] Defendant Scott Ethan Victor, a vice president and board

8    representative at Patten University, attended Zoom and other meetings, including in-person events

9    in China, communicating about the proposed investments and sending the plaintiffs the

10    agreements and other investment documents for signature in July 2021.[5]

11         Defendant Jingling Li is QZ's mother: with QZ, she opened corporate bank accounts for

12    Bluestone and World Education at JP Morgan Chase Bank (as substitutes for their earlier accounts

13    at East West Bank), which gave QZ and Li control of the accounts, even though they were not

14    authorized corporate representatives, and improperly withdrew $150,000 from the Bluestone

15    account in September 2023.[6] Defendant Andrew Babes works at JP Morgan Chase Bank as a

16    business-relations manager, is personal friends with QZ, and allowed QZ and Li to open the

17    corporate accounts, despite their lack of authorization and without documentation, thus allowing the

18    misappropriation of the plaintiffs' funds.[7]

19         Chase VP Ronald Gunawan received an email of the Patten-Stanford stock agreements on July

20    13, 2021.[8] Around that time, Babes and Gunawan were copied on an email from East West Bank to

21    Li, expressing concern about her attempt to pressure the bank to transfer funds to Bluestone's Chase

22    account because she was a "non-signer" to the account and saying that it would communicate with

23

24    _____

      [3] *Id.* at 39–40 (¶¶ 80–85).

25    [4] *Id.* at 5 (¶ 14), 28–30 (¶¶ 60–62, 65), 39–40 (¶¶ 84–85).

26    [5] *Id.* at 6 (¶ 15), 30 (¶¶ 63–64).

      [6] *Id.* at 28 (¶ 59), 44 (¶ 92).

27    [7] *Id.* at 6–7 (¶ 17), 27 (¶ 54, 57–59).

28    [8] *Id.* at 25 (¶ 73).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    plaintiff Zhang directly (instead of Li).[9] In July 2023, in a meeting with Chan, Babes said that she

2    would have to obtain QZ's and Li's consent to change the authorized account representatives to

3    Chang and Zhang. When showed corporate account documents with his purported signature, Babes

4    laughed and said that he had not signed them. Chan explained that she had been unable to talk with

5    QZ, who was avoiding her, and she did not know how to contact Li. Babes told her that he would

6    talk to QZ and get back to her. He never did.[10]

7

8    ## 2.   Ownership of Bluestone and World Education

9    The plaintiffs allege that by early 2021, during the time QZ was sending false due-diligence

10   and financial statements to Chan and Zhang, QZ pressured them to invest quickly and to set up

11   U.S.-based companies to facilitate the investment.[11] The plaintiffs could not travel to the U.S. due

12   to China's COVID 19 travel restrictions, but QZ identified "trustworthy professionals" and

13   arranged for them to set up Bluestone (incorporated in Delaware on February 25, 2021) and World

14   Education (incorporated in Delaware on April 16, 2021), using 31259 Wiegman Road in

15   Hayward, California, as the business address for each. Zhang and Chan are the principals,

16   respectively, of the entities.[12]

17   ### 2.1  Bluestone

18   Zhang formed Bluestone with the assistance of "Jacklyn Kelly," who was appointed secretary

19   and one of two directors along with Zhang, who also was appointed Bluestone's president and

20   treasurer.[13] On March 1, 2021, Bluestone issued 99 percent of its shares to Zhang and 1 percent to

21   QZ's mother, Li, who transferred her 1 percent to Zhang on April 13, 2021.[14] As majority and

22   then sole shareholder, Zhang had the authority to approve any changes to the directors of

23

24   [9] *Id.* at 36 (¶ 77).

     [10] *Id.* at 46–47 (¶¶ 100–03).

25   [11] *Id.* at 20 (¶ 46).

26   [12] *Id.* at 20–22 (¶¶ 47–48).

27   [13] *Id.* at 23–24 (¶ 50).

     [14] *Id.* at 5 (¶ 13); Stock Ledger, Ex. 8 to Chan Decl. – ECF No. 54-2 at 26; Equity Transfer Agreement,
28   Ex. 6 to Chan Decl. – ECF No. 54-2 at 19–20.

1    Bluestone.[15] He did not do so until January 5, 2024, when he executed a written consent, as sole

2    stockholder, naming himself the sole director and amending Bluestone's bylaws to name himself

3    president and Chan secretary.[16]

4    According to the QZ defendants, at a board meeting on May 3, 2022, Zhang was removed as

5    president and treasurer, and Li was appointed president, treasurer, and CEO.[17] Bluestone is wholly

6    owned by Patten Holding and has no other shareholders.[18] Bluestone has no dispute or controversy

7    with the QZ defendants, did not authorize the lawsuit, sent a letter to the plaintiffs' counsel

8    demanding dismissal of the claims, has no claim for damages, and suffered no harm.[19]

9    **2.2  World Education**

10    Chan formed World Education with the assistance of "Guizhong Tan," who was appointed

11    president, secretary, and director, and Chan was appointed treasurer.[20] World Education issued 99

12    percent of its shares to Chan and 1 percent to Tan, who transferred his 1 percent to Chan on May 2,

13    2021.[21] On January 5, 2024, Chan executed a written consent, as sole stockholder, naming herself

14    the sole director and amending the bylaws to name herself president and Zhang secretary.[22]

15    According to the QZ defendants, on April 8, 2021, World Education terminated Chan (referring

16    to her as Yuting Chen) because she did not provide a valid U.S. work permit.[23] World Education is

17    wholly owned by Patten Holding and has no other shareholders.[24] World Education has no dispute

18

19

20

---

[15] Zhang Decl. – ECF No. 54-1 at 2 (¶ 8); Bylaws, Ex. 2 to *id.* – ECF No. 54-1 at 31–41.

[16] Am. Bylaws & Written Consents, Exs. 3–5 to Zhang Decl. – ECF No. 54-1 at 43–63.

[17] Minutes, Ex. G to Li Decl. – ECF No. 43-2 at 17.

[18] Li Decl. – ECF No. 43-1 at 3 (¶ 3) & Ex. H to *id.* – ECF No. 43-1 at 19.

[19] Li Decl. – ECF No. 43-1 at 3 (¶¶ 11–12) & Email/Letter, Ex. I to *id.* – ECF No. 43-1 at 21–24.

[20] Compl. – ECF No. 1 at 24–25 (¶ 51).

[21] Equity Transfer Agreement, Ex. 5 to Chan Decl. – ECF No. 54-2 at 16–17.

[22] Am. Bylaws & Written Consents, Exs. 10–12 to Chan Decl. – ECF No. 54-2 at 40–60.

[23] Letter, Ex. F to Tan Decl. – ECF No. 43-4 at 16; 8/1/2025 Notice, Ex. G to *id.* – ECF No. 43-4 (referring to "Irene Chan" as a fake name and referencing Yuting Chen's appointment and recission).

[24] Tan Decl. – ECF No. 43-3 at 3 (¶ 10) & Ex. H to *id.* – ECF No. 43-3 at 20.

United States District Court
Northern District of California

1    or controversy with the QZ defendants, did not authorize the lawsuit, sent a letter to the plaintiffs'

2    counsel demanding dismissal of the claims, has no claim for damages, and suffered no harm.[25]

3

4    **3.  Service on Victor**

5        Victor has resided in China for over nine years (in Hangzhou, China, since April 2022), and

6    told Chan this.[26] The plaintiffs' investigator did not find a China address for Victor but identified

7    two United States addresses: a residence at 3101 Sceptre Drive, Rocklin, CA 95765, and 5015

8    Madison Avenue #A, Sacramento, CA 95841, which is an Anytime Mailbox facility that markets

9    itself as a virtual mail service to expatriates.[27] The process server attempted service at the Rocklin

10   address on July 7 and 8, 2025, but determined that it was not Victor's current address.[28] According

11   to the defendants, when the process server attempted service at the Rocklin address, she was told

12   that the address had been the "Delgado residence since 2021."[29] On July 15, 2025, pursuant to the

13   substituted service provisions of Cal. Civ. Proc. Code § 415.20(b), the plaintiffs served Mark

14   Shmorgon, a California-barred attorney in charge of that address, at the Sacramento address, and

15   mailed the summons and complaint to that address.[30]

16

17   **4.  The Claims and Other Procedural History**

18       The complaint has the following claims: (1) securities fraud by all plaintiffs against QZ and

19   Patten Holding, in violation of 15 U.S.C. § 78j, 17 C.F.R. § 240.10b-5, and Cal. Corp. Code

20   § 25401; (2) misrepresentation, fraud, and fraud in contract formation by all plaintiffs against QZ

21   and Patten Holding; (3) breach of contract by plaintiffs Bluestone and World Education against

22   Patten Holding, QZ, and Patten University; (4) receiving stolen property by all plaintiffs against

23

---

24   [25] Tan Decl. – No. 43-3 at 3 (¶¶ 11–12) & Email/Letter, Ex. I to *id.* – ECF No. 43-3 at 22–26.

25   [26] Victor Decl. – ECF No. 43-5 at 1–2 (¶¶ 2–4).

26   [27] Judah Decl. – ECF No. 54-3 at 4 (¶¶ 15–16).

     [28] *Id.* at 4–5 (¶¶ 17–18); Aff. of Due Diligence, Ex. A to *id.* – ECF No. 54-3 at 7.

27   [29] Reply – ECF No. 57 at 7 (citing Aff. of Due Diligence, Ex. A to Judah Decl. – ECF No. 54-3 at 7).

28   [30] Judah Decl. – ECF No. 54-3 at 5 (¶ 19) & n.1; Proof of Serv. – ECF No. 10 at 17.

1  QZ, Patten Holding, and Li; (5) conversion by all plaintiffs against QZ, Patten Holding, and Li;

2  (6) aiding and abetting fraud and conspiracy to commit fraud by all plaintiffs against Li;

3  (7) negligence by plaintiffs Bluestone and World Education against Chase Bank and Babes; (8)

4  aiding and abetting fraud and conspiracy to commit fraud by plaintiffs Bluestone and World

5  Education against Chase and Babes; (9) negligent misrepresentation by all plaintiffs against

6  defendants Sawyer and Victor; and (10) aiding and abetting fraud and conspiracy to commit fraud

7  by all plaintiffs against defendants Sawyer and Victor.[31]

8      The parties consented to magistrate-judge jurisdiction.[32] 28 U.S.C. § 636(c). The court held a

9  hearing on the motions to dismiss on October 23, 2025.

10

11                          **STANDARD OF REVIEW**

12     A complaint must contain a short and plain statement of the claim showing that the pleader is

13  entitled to relief to give the defendant fair notice of the claim and the grounds upon which it rests.

14  Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint may fail

15  to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts

16  alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir.

17  2016). The court accepts as true the complaint's factual allegations and construes them in the light

18  most favorable to the plaintiffs. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th

19  Cir. 2018). A complaint must allege "enough facts to state a claim to relief that is plausible on its

20  face." *Twombly*, 550 U.S. at 570. Threadbare recital of the elements of a claim, supported by mere

21  conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

22     "[A] party must state with particularity the circumstances constituting fraud . . . . Malice, intent,

23  knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

24  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the

25  misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The

26

27  [31] Compl. – ECF No. 1 at 50–63 (¶¶ 111–89).

28  [32] Consents – ECF Nos. 9, 21, 24, 29, 39–40.

1    plaintiff must allege "what is false or misleading about a statement, and why it is false." *Id.* A

2    driving concern behind Rule 9(b) is that defendants be given fair notice of the charges against them,

3    meaning, allegations of fraud specific enough to give them "notice of the particular misconduct . . .

4    so that they can defend against the charge and not just deny that they have done anything wrong." *In*

5    *re Lui*, 646 F. App'x 571, 573 (9th Cir. 2016); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th

6    Cir. 2007) (particularity so that the defendant can prepare an adequate answer).

7

8                                                    **ANALYSIS**

9         The motions raise four issues: (1) whether Bluestone and World Education have Article III

10    standing or the capacity to sue, given the defendants' allegations that Patten Holding controls

11    them; (2) whether the plaintiffs sufficiently allege fraud by the Patten defendants (the QZ

12    defendants and Sawyer); (3) the adequacy of service on Victor; and (4) the sufficiency of the

13    claims against the Chase defendants.[33] Service is not effective against Victor, but the claims

14    otherwise survive against the Patten defendants. The claims against the Chase defendants are

15    dismissed: the negligence claim is barred by the economic-loss doctrine (but the plaintiffs may

16    amend to allege a contract claim), and the fraud claims are dismissed, with leave to amend,

17    because the plaintiffs did not allege the defendants' knowledge of the fraud.

18

19    **1.   Bluestone and World Education: Subject-Matter Jurisdiction and Capacity to Sue**

20         The defendants contend that Zhang and Chan falsely allege that they are the principal

21    shareholders of Bluestone and World Education, when in fact, Patten Holding is the sole

22    shareholder of both. They assert that unless the plaintiffs present evidence to the contrary, there is

23    no actionable dispute between the corporate plaintiffs, who lack Article III standing or the capacity

24    to sue, and the defendants.[34] The plaintiffs counter that regardless of who controls the corporate

25    plaintiffs, they have adequately alleged a federal securities-fraud claim against QZ and Patten

26

27    _____
      [33] Mots. – ECF Nos. 30, 38, 43.

28    [34] Mot. – ECF No. 43 at 8–9, 16–18.

      ORDER – No. 25-cv-05396-LB                          8

1    Holding (thus establishing federal-question jurisdiction), the ownership issue implicates capacity to

2    sue (not standing), and fact disputes preclude dismissal for lack of capacity.[35] The defendants reply

3    that limited jurisdictional discovery is warranted to address the competing claims of ownership.[36]

4    The corporate plaintiffs' authority is not jurisdictional and instead implicates the defendants' legal

5    defense of the corporate plaintiffs' lack of capacity to sue. *See Summers v. Interstate Tractor &*

6    *Equip. Co.*, 466 F.2d 42, 50 (9th Cir. 1972). The motion to dismiss is denied.

7        The QZ defendants cite no cases treating capacity or authority to sue as implicating subject-

8    matter jurisdiction.[37] The dispute instead is about capacity to sue. The individual plaintiffs — who

9    adequately plead securities fraud (see below) — ultimately may not have ownership of the

10   corporate plaintiffs (depending on the resolution of disputed facts) and thus may lack capacity to

11   sue. Capacity is different than subject-matter jurisdiction. *Id.* (capacity or authority to sue

12   "generally does not affect the subject matter jurisdiction of the district court"); *De Saracho v.*

13   *Custom Food Mach.*, 206 F.3d 874, 878 n.4 (9th Cir. 2000) ("Even if defendants are correct that

14   [the plaintiffs] lacked authorization to sue, this court does not lack subject matter jurisdiction in the

15   sense that it would if the plaintiffs lacked standing to sue under the 'case or controversy'

16   requirement of Article III of the Constitution."). Lack of capacity is a waivable defense of legal

17   insufficiency of the claims. *Farina Foccacia & Cucina Italian, LLC v. 700 Valencia St.*, No. 15–cv–

18   02286–JCS, 2015 WL 4932640, at *5 (N.D. Cal. Aug. 18, 2015).

19       Moreover, even if the issue is jurisdictional, it is too intertwined with the merits facts about

20   fraud to be resolved through a motion to dismiss. *Augustine v. United States*, 704 F.2d 1074, 1077

21   (9th Cir. 1983). The court does not order early jurisdictional discovery (usually limited to sixty

22   days in aid of an early motion to dismiss) and instead directs that the issue can be raised after

23   merits discovery has illuminated the issue (given the interplay with the fraud allegations).

24

25

26
---
27   [35] Opp'n – ECF No. 54 at 16–20.

     [36] Reply – ECF No. 57 at 5–6.

28   [37] Opp'n – ECF No. 54 at 16–17 (making this point and analyzing cases).

United States District Court
Northern District of California

**2.    Sufficiency of Claims Against the Patten Defendants (QZ Defendants and Sawyer)**

The parties dispute whether (1) the plaintiffs pleaded their fraud claims with particularity, including the claims for conspiracy to commit fraud and aiding and abetting fraud (against Li, Sawyer, and Victor), negligent misrepresentation (against Sawyer and Victor), and receipt of stolen property and conversion (against QZ, Li, and Patten Holding), (2) the plaintiffs sufficiently pleaded alter-ego liability (against QZ), and (3) the conversion and theft claims are barred by the economic-loss doctrine.[38]

### 2.1    Fraud

The defendants contend that the plaintiffs plead fraud on information and belief, not facts, especially regarding whether the statements represented financials falsely.[39] The plaintiffs counter that they identify specific statements in forged documents (inflated revenue, assets, and enrollment) and contrast them to actual facts (actual revenue, assets, and enrollment), identify other demonstrable false statements (the misrepresentations in the stock agreements about providing accurate audited balance sheets, statements of operations, and the cash flows and the forged agreement with Stanford), and allege the loss of their funds.[40]

Fraud is pleaded sufficiently. The plaintiffs identify QZ's false statements (including financial reports and due-diligence reports) to induce the investment, Patten Holding's misrepresentations in the stock agreements sent in July 2021, QZ's delivery of forged agreements between Patten University and Stanford University, Li's opening accounts and accessing of funds, and specific acts by Sawyer and Victor, who signed and sent the agreements (with their false statements) in aid of the fraudulent scheme.[41] This pleads not only fraud by the principals but also conspiracy to commit fraud and aiding and abetting fraud against Li (who opened accounts and converted funds) and Sawyer and Victor (who participated in investment meetings, signed the agreements with the false

---

[38] Mot. – ECF No. 43 at 19–20; Mot. – ECF No. 30 at 7–11.

[39] Mot. – ECF No. 43 at 20–21.

[40] Opp'n – ECF No. 54 at 20–21.

[41] *See id.* at 22–23 (summarizing complaint's allegations, including Compl. – ECF No. 1 at 14–17 (¶¶ 36–43)); Opp'n – ECF No. 47 at 1–2 (same re Sawyer); *see supra* Statement.

United States District Court
Northern District of California

1    statements, and signed the false Stanford Log-Form Agreement). The complaint plausibly alleges a

2    scheme that was entirely fraudulent, especially given the plaintiffs' identification of the obvious

3    falsity of representations by contrasting them to actual facts.

4          A related issue is the claim of negligent misrepresentation, asserted against Sawyer and Victor.

5    The defendants contend that the plaintiffs did not plead fraud with particularity under Rule 9(b).[42]

6    The plaintiffs dispute that the claim requires pleading with particularity but contend — as the

7    court has held — that they did.[43] Because the plaintiffs pleaded fraud with particularity at the

8    pleadings stage, the legal issue need not be addressed now. The same approach disposes of the

9    Rule 12(b)(6) challenge to the claims for receiving stolen property and conversion.

10         The next issue is whether the economic-loss doctrine bars the claims for theft and conversion.

11   **2.2    Economic-Loss Doctrine**

12         The economic-loss doctrine generally bars recovery in tort for negligently inflicted, purely

13   economic losses, meaning, financial harm unaccompanied by physical injury or property damage.

14   *Rattagan v. Uber Techs, Inc.*, 17 Cal. 5th 1, 20 (2024); *see Grouse River Outfitters Ltd. v. NetSuite,*

15   *Inc.*, No. 16-cv-02954-LB, 2016 WL 5930273, at *11 (N.D. Cal. Oct. 12, 2016) (breach of contract;

16   collecting and analyzing cases). Excepted from this rule are claims of fraudulent inducement.

17   *Robinson Helicopter v. Dana Corp.*, 34 Cal. 4th 979, 989–90 (2004) (claim that a "contract was

18   fraudulently induced"); *Rattagan*, 17 Cal. 5th at 31 (economic-loss rule does not apply "where the

19   contract was fraudulently induced"); *River Supply, Inc. v. Oracle Am., Inc.*, No. 3:23-cv-02981-LB,

20   2024 WL 665188, at *3 (N.D. Cal. Feb. 16, 2024) (same).

21         The claims are grounded in fraud, and the doctrine thus does not preclude them at the pleadings

22   stage. Also, some of the parties were not in contractual privity with each other.[44] The defendants

23   reframe their argument in reply to limit it to the conversion claim and the alleged refusal to return

24

25

26   ───────────────

27   [42] Mot. – ECF No. 43 at 26; Mot. – ECF No. 30 at 7–8.

     [43] Opp'n – ECF No. 47 at 5–6; Opp'n – ECF No. 54 at 5–8.

28   [44] Opp'n – ECF No. 54 at 32 (making this point).

1    funds invested under the parties' agreements.[45] But given that he claims are grounded in fraud, the

2    economic-loss rule does not bar them.

3    **2.3    Alter-Ego Liability**

4    The next issue is whether the plaintiffs have sufficiently pleaded QZ's alter-ego liability. The

5    defendants assert that the allegations about QZ's conduct about Patten Holding are conclusory,

6    based on knowledge and belief.[46] The plaintiffs respond that they have alleged that QZ

7    commingled his funds with Patten Holding's funds (and those of other identified entities), he

8    stated that he was personally liable for Patten's debts (including by promising to reimburse sums

9    owned to the plaintiffs by Patten or other entities), he did not maintain minutes or corporate

10   records, he used the same address for multiple entities, employed the same employees, lied about

11   Patten Holding (including its ownership, management, and financial interests), and used the

12   corporate entity as a shield against personal liability for illegal transactions.[47]

13   The test for piercing corporate veil is not a litmus test and instead depends "on the

14   circumstances of each particular case." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985).

15   The flexible test has two general requirements: (1) "there be such unity of interest and ownership

16   that the separate personalities of the corporation and the individual no longer exist"; and (2) "if the

17   acts are treated as those of the corporation alone, an inequitable result will follow." *Politte v.*

18   *United States*, No. 07cv1950 AJB (WVG), 2012 WL 965996, *9 (S.D. Cal. Mar. 21, 2012) (citing

19   *Mesler*, 39 Cal. 3d at 300); *accord, e.g.*, *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th

20   523, 538 (2000). Among the factors to be considered in applying this doctrine are:

21          Commingling of funds and other assets; the unauthorized diversion of corporate
            funds or assets to other than corporate uses; the treatment by an individual of the
22          assets of the corporation as his own; the failure to maintain minutes or adequate
            corporate records; sole ownership of all of the stock in a corporation by one
23          individual; the failure to adequately capitalize a corporation; the use of a corporation
            as a mere shell, instrumentality or conduit for a single venture or the business of an
24          individual or another corporation; the disregard of legal formalities; the diversion of

25

26
     ───────────────────────
     [45] Reply – ECF No. 57 at 16–18.
27   [46] Mot. – ECF No. 43 at 28.

28   [47] Opp'n – ECF No. 54 at 29 (citing Compl. – ECF No. 1 at 48–49 (¶ 108) and other new evidence).

ORDER – No. 25-cv-05396-LB                12

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors; the use of a corporation as a subterfuge of illegal transactions.

*Leek v. Cooper*, 194 Cal. App. 4th 399, 417 (2011) (cleaned up). The factors are not exhaustive: others may be considered "under the particular circumstances of each case." *Id.* at 418.

The plaintiffs allege specific facts — commingling of funds, shared offices and employees, use of the corporation as a subterfuge for illegal transactions, use of the same offices, and promises to reimburse sums owed by Patten Holding to the plaintiffs directly or through other entities — that are not conclusory. The allegations are enough at the pleadings stage, even if predicated in part on knowledge and belief, not only because they are specific but also because they are "peculiarly within the opposing party's knowledge" and "are accompanied by a statement of facts upon which the belief is founded." *Nayab v. Cap. One Bank (USA) N.A.*, 942 F.3d 480, 493–94 (9th Cir. 2019).

## 2.2  Service on Victor

Parties must receive notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Rule 4]." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). The plaintiffs have the burden of establishing that service is valid under Rule 4. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

The defendants contend that Victor lives in China, the plaintiffs know that, and the plaintiffs should have served him under the Hague Convention, given that China is a signatory to it.[48] *See Facebook, Inc. v. 9 Xiu Network (Shenszhen) Tech. Co.*, 480 F. Supp. 3d 977, 981 (N.D. Cal. 2020) (Hague Convention requirements for serving a defendant in China); *Lebel v. Mai*, 210 Cal. App. 4th 2254, 1160 (2012) (same for serving defendant in England). The plaintiffs counter that the Hague Convention applies only "where there is occasion to transmit a judicial or extrajudicial document for service abroad," service turns on the internal law of California (the forum state), and

---

[48] Mot. – ECF No. 43 at 19.

1    California law permits substituted service.[49] *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486

2    U.S. 694, 702 (1988). The defendants reply that substituted service is permitted only if personal

3    service cannot be achieved with reasonable diligence.[50]

4          Service is proper if it is done "following state law for serving a summons in an action brought

5    in courts of general jurisdiction in the state where the district court is located or where service is

6    made[.]" Fed. R. Civ. P. 4(e)(1); *GoDaddy Operating Co., LLC v. Ghaznavi*, No. 17-cv-06545-

7    PJH, 2018 WL 1091257, at *3 (N.D. Cal. Feb. 28, 2018). California allows substituted service at

8    one's office, usual mailing address, or usual place of business. Cal. Civ. Proc. Code § 415.20(a)–

9    (b); *GoDaddy*, 2018 WL 1081257, at *3. The Hague Convention applies only when "a transmittal

10   abroad . . . is required as a necessary part of service." *Schlunk*, 486 U.S. at 707–88; *see* Fed. R.

11   Civ. P. 4(f) (providing for service on foreign defendants by means that include the Hague

12   Convention or, under Rule 4(f)(3), "by other means not prohibited by international agreement, as

13   the court orders"); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002).

14         Any alternative method of service under Rule 4(f) must meet the requirements of due process

15   in that it must be "reasonably calculated, under all the circumstances, to apprise interested parties

16   of the pendency of the action and afford them an opportunity to present their objections." *Mullane*

17   *v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see Rio Props.*, 284 F.3d at

18   1016 ("Even if facially permitted by Rule 4(f)(3), a method of service of process must also

19   comport with constitutional notions of due process."). The court has the discretion to allow an

20   alternative method of service on foreign defendants "if (a) specific facts and circumstances

21   regarding the Foreign Defendants warrant the use of an alternative method and (b) such method

22   comports with due process and is not otherwise prohibited." *Prods. & Ventures Int'l v. Axus*

23   *Stationary (Shanghai) Ltd.*, No. 16-cv-00559-YGR, 2017 WL 1279532, at *2–3 (N.D. Cal. Apr.

24   11, 2017) (discussing Hague Convention and cases allowing service through counsel). Cases have

25   allowed service by email when the defendant's address is unknown. *WeWork Cos. Inc. v. WePlus*

26

27   _____

     [49] Opp'n – ECF No. 54 at 32 (citing Hague Service Convention).

28   [50] Reply – ECF No. 57 at 6 (citing Cal. Civ. Proc. Code § 412.20(b)).

1    *(Shanghai) Techn. Co., Ltd.*, No. 5:18-cv-04543, 2019 WL 8810350, at *2–3 (N.D. Cal. Jan. 10,

2    2019). California courts have permitted service on residents of foreign countries by substituted

3    service. *Cool Runnings Int'l, Inc. v. Gonzalez*, No. 1:21-cv-00974-ADA-HBK, 2023 WL 2143382,

4    at *6 (E.D. Cal. Feb. 21, 2023) (substituted service on defendants residing in Mexico). The

5    plaintiffs cite authority permitting substituted service at a private mail facility.[51] Substituted

6    service is permitted if "a copy of the summons and complaint cannot with reasonable diligence be

7    personally delivered to the person to be served, as specified in" §§ 416.60, 416.70, 416.80, or

8    416.09. Cal. Civ. Proc. Code § 415.20(b).

9        The court cannot conclude on this record and briefing that one attempt to serve Victor at the

10    mailbox facility is reasonable diligence under section 415.20. In *Lebel*, the plaintiff knew that the

11    defendant resided overseas but attempted to personally serve him at his mother's residence. That

12    effort was not sufficient: it did not show that he lived there, that it was reasonable to serve him

13    there (given that he resided abroad), and that his address in England could not be discovered with

14    reasonable diligence. 210 Cal. App. 4th at 1162. Moreover, ordinarily a plaintiff must try to serve

15    someone more than once before substituted service can be made. *Bein v. Brechtel-Jochim Grp.,*

16    *Inc.*, 6 Cal. App. 4th 1387, 1391 (1992) (three attempts to serve defendant at residence, where

17    security guard denied access, was sufficient); *Gonzalez*, 2023 WL 2143382, at *5–7 (reasonable

18    diligence allowing substituted service when the plaintiffs tried to serve the defendants, who were

19    Mexican nationals, four times at the business address where they were registered as managers).

20    The plaintiffs made three attempts to serve Victor at the Rocklin address, the wrong address and

21    thus not reasonable diligence allowing substituted service. *Kremerman v. White*, 71 Cal. App. 5th

22    358, 372 (2021) (multiple attempts to serve the wrong documents at the wrong address followed

23    by one attempt to serve the correct documents at the correct address was not reasonable diligence

24    allowing substituted service). The plaintiffs' other cases allowing substituted service are

25

26

27    ---

28    [51] Opp'n – ECF No. 54 at 33 (citing *Ellard v. Conway*, 94 Cal. App. 4th 540, 545 (2001), and Cal. Civ.
     Proc. Code § 415.20(c)).

1  distinguishable. *See, e.g.*, *Yamaha Motor Co. v. Super. Ct.*, 174 Cal. App. 4th 264, 269–75 (2009)

2  (allowed substituted service on a Japanese corporation's American subsidiary).

3

4

5  **3.  Sufficiency of the Claims Against the Chase Defendants**

6      The claims against Chase and Babes are negligence, aiding and abetting fraud, and conspiracy

   to commit fraud.

7      Negligence requires duty, breach, causation, and damages. *S. Cal. Gas Leak Cases*, 7 Cal. 5th

8  391, 397 (2019). Banks owe no duty to monitor depositor accounts for suspicious activity absent a

9  contractual agreement. *Kurtz-Ahlers, LLC v. Bank of Am., N.A.*, 48 Cal. App. 5th 952, 956 (2020);

10  *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 537 (1998). A bank has a duty — implied in its

11  contract with its depositor — to act with reasonable care in its transactions with its depositors.

12  *Kurtz-Ahlers*, 48 Cal. App. 5th at 956; *see Rodriguez v. Bank of the W.*, 162 Cal. App. 4th 454,

13  460 (2008); *Wartell v. Wells Fargo Bank, N.A.*, 755 F. Supp. 3d 1252 (N.D. Cal. 2024). Banks

14  typically owe no duties to non-customers. *Dodd v. Citizens Bank of Costa Mesa*, 222 Cal. App. 3d

15  1624, 1628 (1990); *Williams v J.P. Morgan Chase Bank, N.A.*, 704 F. Supp. 3d 1020, 1025 (N.D.

16  Cal. 2023); *Software Design & Application Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472,

17  479 (1996) (bank owned no duty to plaintiff entity when thieves opened an account in the name of

18  a fictious partnership with the same name); Cal. Com. Code § 4104(a)(5) (a customer is a bank

19  accountholder). The economic-loss rule bars tort recovery for purely economic losses from

20  negligent contract performance unless harm independent from the contract is shown, such as

21  through fraud. *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922–24 (2022); *Robinson

22  Helicopter*, 34 Cal. 4th at 988; *Rattagan*, 17 Cal. 5th at 23.

23      The duties alleged here — to employ reasonable security procedures and monitor transactions

24  — arise from contractual obligations and not from a breach of an independent claim for

25  negligence. Otherwise, the bank owes no ordinary duty of care to non-depositors, which bars any

26

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    negligence claim that predates the contractual arrangement. The plaintiffs can replead the

2    negligence claim as a contract claim after they obtain the underlying contracts.[52]

3        Fraud can be a standalone claim. *Healixa Inc., v. Int'l Monetary*, No. 2:25-cv-00572-RGK-AS,

4    2025 WL 1543617, at *3 (C.D. Cal. Apr. 7, 2025) (the plaintiff promised stock in exchange for the

5    defendant's consulting services; the defendant took the stock, without providing services; the

6    economic-loss doctrine does not bar fraud claims based on affirmative misrepresentations made

7    before contract formation). The issue is whether the plaintiffs plausibly pleaded claims for aiding

8    and abetting fraud and conspiracy to commit fraud. They did not.

9        The elements of aiding and abetting fraud are that the defendants (1) had actual knowledge of

10   the underlying wrongful conduct (here, the fraud) and (2) substantially assisted the fraud. *Casey v.*

11   *U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005). A defendant must act "with the

12   intent of facilitating the commission of that tort." *Id.* at 1145–46 (allegations that banks allowed

13   primary tortfeasor to open accounts in names of fraudulent enterprises, withdraw money from

14   accounts using forged checks, and carry large, unreported amounts of cash out of the bank in

15   unmarked duffel bags did not establish that the bank aided and abetted the tortfeasor).

16       Conspiracy to commit fraud requires an agreement, a wrongful act in furtherance of the

17   agreement, and damages. *Meza v. Wells Fargo Bank, N.A.* No. LA CV 2007-174 JAK SKX, 2021

18   WL 1578035, at *4 (C.D. Cal. Mar. 12, 2021). A plaintiff must allege facts to support an inference

19   that an alleged conspirator had knowledge of the planned tort and the intent to aid in its

20   commission. "Mere association does not make a conspiracy. There must be evidence of some

21   participation or interest in the commission of the offense." *Kidron v. Movie Acquisition Corp.*, 40

22   Cal. App. 4th 1571, 1582 (1995).

23       The defendants assert that the plaintiffs did not plead actual knowledge of the fraud, intent to

24   aid in its commission, or substantial assistance and participation.[53] The plaintiffs contend that they

25   plausibly pleaded the elements by alleging that (1) QZ pressured them to open accounts at Chase,

26

27   ---
     [52] Opp'n – ECF No. 50 at 18 n.5 (suggesting this approach).

28   [53] *Id.* at 12–17.

which was possible only through his friendship with Babes, (2) Babes did not follow Chase policies by requiring in-person attendance to open a corporate account or obtaining required documentation, effectively giving the Patten defendants control of the plaintiffs' funds, (3) East West Bank informed Babes and Gunawan of its concerns about Li's involvement, (4) the Chase defendants knew about QZ's control of the accounts and the transfer of funds to a separate Patten account, (5) Babes and Gunawan had signed copies of documents relating to the Patten-Stanford scheme, and (6) Babes refused to provide information to Chan after she provided documents establishing that Chan and Zhang were corporate representatives.[54] These allegations do not plausibly show intent to commit fraud, knowledge of it, or substantial assistance and instead show only association. *Casey*, 127 Cal. App. 4th at 1147–49, 1152 ("[S]uspicious account activities . . . without more, does not give rise to tort liability for banks."); *Chance World Trading E.C. v. Heritage Bank of Com.*, 438 F. Supp. 2d 1081, 1086 (N.D. Cal. 2005) (bank's failure to adhere to a two-signature requirement or follow other internal policies regarding the documents required for corporate checking accounts did not constitute knowledge of any fraudulent activity).

The plaintiffs' cited authorities do not change this analysis. *Neilson v. Union Bank of California*, *N.A.*, involved a Ponzi scheme, the bank's knowledge of the scheme, and sufficient involvement in the scheme that raised an inference that the bank knew of the scheme and facilitated it by atypical banking procedures. 290 F. Supp. 2d 1101, 1121–22 (C.D. Cal. 2003). In *Gonzalez v. Lloyds TSP Bank*, the bank allegedly knew about the Ponzi scheme and the breach of defendants' fiduciary duties to their investors. 532 F. Supp. 2d 1200, 1206–07 (C.D. Cal. 2006). The plaintiffs have not pleaded similar facts here.

The negligence claim is dismissed without prejudice to asserting a contract claim. The fraud claim is dismissed without prejudice.

---

[54] *Id.* at 7–9, 13–15; Compl. – ECF No. 1 at 26–28 (¶¶ 54–59), 35–37 (¶¶ 73–79), 46–47 (¶¶ 100–05).

ORDER – No. 25-cv-05396-LB                    18

United States District Court
Northern District of California

**CONCLUSION**

The claims against the Chase defendants are dismissed, with leave to amend to add a breach-of-contract claim and to allege fraud. The Patten defendants' motions to dismiss otherwise are denied, except that the court grants Victor's claims to dismiss for lack of service. In their initial case-management-conference statement, the parties must identify a reasonable time to amend the complaint. Any amended complaint must include as an attachment a blackline compare of the amended complaint against the operative complaint. This resolves ECF Nos. 30, 38, and 43.

**IT IS SO ORDERED.**

Dated: October 23, 2025

LAUREL BEELER
United States Magistrate Judge