United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

BLUESTONE INVESTMENT INC., et al.,

Plaintiffs,

v.

QIZHONG HU, et al.,

Defendants.

Case No. 25-cv-05396-LB

**ORDER**

Re: ECF Nos. 150, 154, 155

The parties have three discovery disputes. The defendants moved for a protective order. All parties (including the defendants' former counsel, Nixon Peabody) filed a joint brief addressing whether Nixon Peabody must produce documents over which the defendants have waived attorney-client privilege, the process for in camera review of a subset of those documents as protected by the attorney work-product doctrine, and the effect of the crime-fraud exception on any documents that survive that process. The plaintiffs filed a letter brief seeking discovery responses from the defendants, who did not respond to the letter brief.

The court denies the defendants' motion for a protective order. The court orders Nixon Peabody to produce the documents at issue and orders the process proposed by the parties for in camera review of the subset of those documents withheld as attorney work product. The court orders the defendants to produce the discovery sought in the plaintiffs' letter brief.

United States District Court
Northern District of California

**1. ECF No. 150**

The defendants moved for a protective order, pointing to their invoking Fifth Amendment privilege against self-incrimination and potential violations of foreign law by the plaintiffs.[1] The plaintiffs respond that the motion should be denied because the defendants (1) violated the local rules by omitting a certification that they attempted to confer with plaintiffs before filing the motion and (2) failed to state any ground under Rule 26(c)(1) to support granting a protective order.[2] The defendants reply that they are seeking a protective order to "make clear in a public record" that they "do not want to be seen as doing anything that will assist anyone in engaging in activities which are illegal under American law."[3]

The court denies the motion. Making a public record that a party does not want to do anything illegal is not the function of a protective order. To the extent that the defendants seek a blanket protective order to prevent self-incrimination under the Fifth Amendment, they must assert the privilege on a "question-by-question basis."[4] *Universal Trading & Inv. Co. v. Kiritchenko*, No. C-99-3073 MMC (EDL), 2006 WL 3798157, at *2–3 (N.D. Cal. Dec. 22, 2006).

The plaintiffs request that the court order the defendants to pay its fees related to the motion under Rules 26(c)(3) and 37(a)(5).[5] The court declines to do so here, but the filing of similar motions in the future may warrant awarding fees.

**2. ECF No. 154**

The parties filed this letter brief addressing (1) whether Nixon Peabody must produce the 303 documents addressed in the court's prior order (minus the documents subject to review as attorney work product), (2) a proposed in camera review process to determine whether the attorney work-

---

[1] Mot. – ECF No. 150 at 1–3. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Opp'n – ECF No. 156 at 2–3.

[3] Reply – ECF No. 157 at 2.

[4] Opp'n – ECF No. 156 at 4 (making this point).

[5] *Id.* at 2 n.1.

United States District Court
Northern District of California

product doctrine applies and whether a representative sample is appropriate, and (3) what the effect is of the crime-fraud exception on any documents that survive the work-product analysis.

First, the court previously ordered that the 303 documents at issue be produced, determining that the defendants had waived attorney-client privilege.[6] Nixon Peabody emailed the defendants' counsel to confirm whether he would appeal that order, and the defendants' counsel responded that "Nixon Peabody should 'do everything in [its] power to protect [its] former clients' and suggested that production to Plaintiffs' counsel would be inadvisable." Nixon Peabody has sought clarification from the court on whether it should take any further action. The plaintiffs assert that the issue has already decided the issue and that the documents should be produced.[7] The position provided by the defendants is non-responsive to this issue.[8]

The court orders that Nixon Peabody produce the 303 documents at issue (excluding those subject to review for attorney-work product). The defendants waived attorney-client privilege and have provided no other reason for withholding the documents.[9]

Second, the plaintiffs proposed that Nixon Peabody de-duplicate the fifty-three disputed work-product documents and then submit them for in camera review. Neither Nixon Peabody nor the defendants objected, and all parties agreed that a representative sample was unnecessary.[10] The court orders this process.

Third, the plaintiffs and Nixon Peabody dispute whether the crime-fraud exception extinguishes attorney work-product protection.[11] Nixon Peabody asserts that the crime-fraud exception does not apply to attorney work product, citing California cases and federal cases

---

[6] Order – ECF No. 144 at 2–3.

[7] Disc. Letter Br. – ECF No. 154 at 4.

[8] *Id.* at 4–5.

[9] Order – ECF No. 144.

[10] Disc. Letter Br. – ECF No. 154 at 5–6.

[11] *Id.* at 7–8. The defendants' position does not contain substantive argument. *See id.* at 7.

United States District Court
Northern District of California

involving state-law claims.[12] The plaintiffs contend that federal law applies to cases involving federal claims (like this case) and that Nixon Peabody's authorities, therefore, do not apply here.[13]

Federal law applies.

"Questions of privilege that arise in the course of the adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting Fed. R. Evid. 501); *see also Heathman v. U.S. Dist. Ct.*, 503 F.2d 1032, 1034 (9th Cir. 1974) ("[I]n federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege."). Federal law applies to privilege-based discovery disputes involving federal claims, even if allied with pendent state-law claims. *Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1017 (N.D. Cal. 2022).

The crime-fraud exception applies to the work-product doctrine and attorney-client privilege. *Anbang Grp. Holdings Co. v. Zhou*, No. 23-cv-00998-VC (TSH), 2024 WL 199563, at *1 (N.D. Cal. Jan. 18, 2024).

Here, the plaintiffs assert claims against the defendants for securities fraud under 15 U.S.C. § 78j and various state-law claims.[14] Nixon Peabody's own cited cases agree that the application of state law to issues of privilege depends on diversity jurisdiction. *Ward v. Equilon Enters., LLC*, No. C 09-4565 RS, 2011 WL 2746645, at *1 (N.D. Cal. July 13, 2011) ("Because the underlying claim is predicated on state law, the question of privilege is controlled by California law."); *Ritchie v. Sempra Energy*, No. 10cv1513-CAB(KSC), 2015 WL 12912030, at *3 (S.D. Cal. June 11, 2015) ("Jurisdiction in this case is based on diversity of citizenship of the parties. In diversity cases, the Court must decide privilege issues in accordance with state law."). Thus, federal law applies, and the crime-fraud exception will extinguish protection under the attorney work-product doctrine.

[12] *Id.* at 7–8.

[13] *Id.* at 6–7.

[14] Compl. – ECF No. 1 at 50–63.

United States District Court
Northern District of California

**3. ECF No. 155**

The plaintiffs filed this letter brief to address the defendants' refusing to (1) produce documents responsive to Request for Production Nos. 1–13, 15–17, 20–21, and 23–39, (2) permit the inspections responsive to Requests for Inspection Nos. 1 and 3–7, and (3) supplement their Rule 26 disclosures with correct contact information for multiple witnesses who are purported employees or officers of Patten Holding LLC or its corporate affiliates.[15] The defendants did not file a response under the alternate letter-brief process provided by court and, thus, have waived objections to the discovery.[16]

Even if the defendants had not waived their objections, the discovery at issue is relevant. First, the plaintiffs seek productions from the defendants, including (1) communications, documents, and agreements relating to Stanford or Patten University (RFP Nos. 1–6), (2) documents and communications relating to the forged diligence materials relating to Stanford or Patten University (RFP Nos. 7–10, 12, 19), (3) pre-suit communications with Nixon Peabody relating to Stanford, Patten University, the plaintiffs, or Patten Holding (RFP No. 11), (4) communications with the plaintiffs and documents about Chase Bank (RFP Nos. 15–17), (5) documents relating to the defendants' access to and control over Patten.edu web and email domains (RFP No. 20), (6) documents relating to the defendants' counterclaims about stolen iPads (RFP No. 21), (7) documents about the plaintiffs' funds (RFP No. 23), (8) documents relating to the defendants' purported signatories, William Sawyer and Scott Victor Ethan (RFP Nos. 24–25), (9) documents relating to the defendants' asserted ownership and control of Bluestone and WEIA (RFP Nos. 26–30), (10) documents regarding QZ's alter ego entities (RFP Nos. 31–37), and (11) documents regarding the defendants' bank accounts (RFP Nos. 38–39).[17] These requests seek documents related to the alleged underlying fraudulent scheme and, thus, are relevant.

---

[15] Disc. Letter Br. – ECF No. 155.

[16] *See* Order – ECF No. 147 (the process is an "opening position 2 pages, opposition 2 pages; due seven days later, and reply 4 days later").

[17] Disc. Letter Br. – ECF No. 155 at 1–2.

United States District Court
Northern District of California

Second, the plaintiffs seek a forensic inspection of QZ's phones, WeChat accounts, and email accounts responsive to RFP Nos. 1, 3, and 4. These items are relevant to allegations of fraud, alter ego, and conversion, and the plaintiffs' request is similar to the forensic inspection the court previously granted regarding QZ's computers and tablets.[18] The court orders the inspection.

Third, the plaintiffs represent that the defendants agreed to update their initial disclosures but have not done so.[19] The court orders the defendants to update their initial disclosures.

## CONCLUSION

The court denies the defendants' motion for a protective order. The court orders Nixon Peabody to produce the 303 documents at issue and orders the process for in camera review of the subset of those documents withheld as attorney work product. The court orders the defendants to produce the discovery sought by the plaintiffs' in ECF No. 155. This order resolves ECF Nos. 150, 154, and 155.

**IT IS SO ORDERED.**

Dated: June 4, 2026

LAUREL BEELER
United States Magistrate Judge

[18] *See* Order – ECF No. 104 at 3.

[19] Disc. Letter Br. – ECF No. 155 at 2; *see* Emails, Exs. A–B to Disc. Letter Br. – ECF Nos. 115-1–2.