United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

BLUESTONE INVESTMENT INC., et al.,

Plaintiffs,

v.

QIZHONG HU, et al.,

Defendants.

Case No. 25-cv-05396-LB

**ORDER GRANTING DEFAULT JUDGMENT**

Re: ECF No. 215

## INTRODUCTION

Plaintiffs Lishan Zhang and Irene Chan are investors who live in China. They and the two corporations that they formed for their investment, Bluestone Investment Inc. and World Education Association, Inc. (WEAI), allege that defendants Qizhong Hu, his mother Jingling Li, and Patten Holding LLC defrauded them of more than $35 million that they invested in a purported joint venture between Patten University and Stanford University.[1] After the defendants disobeyed five discovery orders and a final warning, the court struck their answer, dismissed their counterclaims, and entered their default.[2] The plaintiffs now move for default judgment on their claim for receiving stolen property under California Penal Code § 496. They ask for their actual

[1] Compl. – ECF No. 1 at 2 (¶¶ 1–2), 3 (¶¶ 6–9). Record citations are to the ECF-stamped page numbers at the top of filed documents.

[2] Orders – ECF Nos. 206 at 12–13, 213 at 4–5; Entry of Default – ECF No. 214.

damages of $24,280,000, trebled under § 496(c) to $72,840,000, against the three defendants jointly and severally.[3] The defendants did not oppose the motion.

The court grants the motion. It has jurisdiction, the defendants had notice, and the *Eitel* factors favor default judgment. Bank records prove the actual damages. The remaining issue is whether the plaintiffs are entitled to treble damages, and they are. The complaint's allegations, which the default establishes, show that the defendants obtained the plaintiffs' money by false pretenses (including forged financial reports and forged agreements with Stanford), knew how it was obtained, and received it into accounts that they controlled. That is a violation of § 496(a), and § 496(c) gives a person injured by the violation an action for three times the actual damages. The court awards $72,840,000. Because no claim remains against any other defendant, the court will separately enter a final judgment.

## STATEMENT

### 1. The Investment Scheme

The complaint alleges the following. Hu, the managing partner of Patten Holding, solicited more than $35 million from Chan and Zhang in 2021 by promising a joint venture between Patten University and Stanford University. Chan and Zhang formed Bluestone and WEAI as vehicles for the investment.[4] To induce it, Hu sent them a valuation attributed to PricewaterhouseCoopers, an auditor's report attributed to an accounting firm, and a due-diligence report attributed to a law firm. All three were forgeries, and they overstated Patten University's revenue, assets, and enrollment many times over.[5]

In July 2021, Bluestone and WEAI signed stock-purchase agreements with Patten Holding, Bluestone for $27.3 million and WEAI for $8.19 million.[6] The agreements called for most of the money to be held in escrow and refunded unless Patten Holding delivered Stanford's signed

---

[3] Mot. – ECF No. 215 at 2, 7.

[4] Compl. – ECF No. 1 at 2 (¶¶ 1–2), 3–4 (¶¶ 6–10).

[5] *Id.* at 10–17 (¶¶ 28–42).

[6] *Id.* at 33 (¶ 68 & n.6), 51 (¶ 117).

authorization for the joint venture.[7] Hu told the plaintiffs that the account that received their money was the escrow account. It was an account that he controlled.[8] In August 2021, he sent Chan two agreements between Patten Holding and Stanford, one purportedly signed by Stanford's president. Both were forgeries.[9] The joint venture never launched, Patten Holding never held the public offering that Hu had promised, and it refused the plaintiffs' demands to redeem their shares or refund their investment.[10]

Li's part involved the bank accounts. At Hu's urging, Chan and Zhang agreed that Bluestone and WEAI would open accounts at JPMorgan Chase Bank (Chase). Hu and Li opened them, which gave the two of them, and not Chan and Zhang, control of the accounts.[11] Chase listed Li as the authorized signer on Bluestone's account and Hu as the signer on WEAI's.[12] When Bluestone's first bank, East West Bank, was asking questions about Bluestone's funds, Li pressed it by email to approve their transfer to the new Chase account.[13]

**2. The Transfers**

The plaintiffs submitted account statements and emails that Chase produced in discovery.[14] They show the following. On July 6, 2021, Chan transferred $8,191,000 into WEAI's Chase savings account.[15] On July 15, 2021, Zhang transferred $29,546,000 from Bluestone's account at East West Bank to its Chase account.[16] On July 16, 2021, $8,190,000 of WEAI's money and $27,300,000 of Bluestone's money went by wire to an account in the name of "Patten Project

---

[7] *Id.* at 33–34 (¶¶ 68–69).
[8] *Id.* at 37 (¶ 79).
[9] *Id.* at 37–40 (¶¶ 80–85).
[10] *Id.* at 40–41 (¶ 86), 44–45 (¶¶ 93–94).
[11] *Id.* at 26–28 (¶¶ 53–59), 35 (¶ 73).
[12] *Id.* at 46–47 (¶ 102).
[13] *Id.* at 26–27 (¶ 55), 36 (¶ 77).
[14] Derrick Decl. – ECF No. 215-1 at 2–3 (¶¶ 3–9).
[15] Chase Statement, Ex. 1 to Derrick Decl. – ECF No. 215-1 at 5; Compl. – ECF No. 1 at 35 (¶ 74).
[16] Chase Statement, Ex. 3 to Derrick Decl. – ECF No. 215-1 at 13; Compl. – ECF No. 1 at 35 (¶ 75).

United States District Court
Northern District of California

Bluestone WEA GGI Holdings Inc."[17] The next day, Hu emailed his Chase banker that "[o]ur company account" had "two incoming wire transfers" and asked for receipts "that show the funds are received." The banker confirmed that "both wire transfers have hit the accounts."[18] By July 20, 2021, $7,100,000 had moved to another sub-account, and $1,500,000 had been withdrawn.[19] On September 27, 2023, Li withdrew $150,000 from Bluestone's Chase account.[20]

The plaintiffs credit two amounts against their loss. One is a $7,110,000 deposit into WEAI's Chase account on April 17, 2023.[21] The other is $4,250,000 that was wired to Chan on February 21, 2023, a transfer that the defendants disclosed in a filing on October 9, 2026.[22] The plaintiffs dispute the defendants' characterization of the wires but deduct them in full so that the damages figure is beyond dispute.[23]

**3. The Default and the Motion**

The defendants moved to dismiss in September 2025, contending in part that Patten Holding owns Bluestone and WEAI and that the plaintiffs thus could not sue in the companies' names. The court denied the motion and reserved the dispute about control for discovery.[24] From January to June 2026, the court issued five orders compelling discovery from the defendants, including bank records and documents about the plaintiffs' funds and about the ownership and control of Bluestone and WEAI. The defendants produced one witness for a deposition and nothing else.[25]

On October 2, 2026, the court found the violations willful and imposed sanctions short of default. It deemed established that the plaintiffs own and control Bluestone and WEAI and barred

---

[17] Chase Statements, Exs. 1–4 to Derrick Decl. – ECF No. 215-1 at 5, 9, 13, 18–19.

[18] Emails, Ex. 5 to Derrick Decl. – ECF No. 215-1 at 23, 26.

[19] Chase Statement, Ex. 4 to Derrick Decl. – ECF No. 215-1 at 16–17, 19.

[20] Chase Statement, Ex. 6 to Derrick Decl. – ECF No. 215-1 at 28; Compl. – ECF No. 1 at 44 (¶ 92).

[21] Chase Statement, Ex. 7 to Derrick Decl. – ECF No. 215-1 at 34.

[22] Disclosure of Transfer of Funds – ECF No. 211 at 1–2.

[23] Mot. – ECF No. 215 at 10.

[24] Order – ECF No. 67 at 8–9, 19.

[25] Order – ECF No. 206 at 4–5.

the defendants from offering any document that they had not produced. It also ordered full compliance by October 8, 2026, and warned that it otherwise would strike the answer and enter default.[26] The defendants did not comply, ask for more time, or appear at the next case-management conference.[27] On October 15, 2026, the court struck their answer, dismissed their counterclaims, and directed the Clerk to enter their default, which the Clerk did the next day.[28]

The plaintiffs moved for default judgment on October 20, 2026. On their claim under § 496, they ask for $72,840,000 against all three defendants. In the alternative, they ask for $51,580,000 against Hu and Patten Holding on Bluestone's contract claim, with Li jointly liable for $24,280,000 of that amount. They do not seek attorney's fees, the expenses that the court awarded in the sanctions order, punitive damages, prejudgment interest, or consequential damages.[29] The defendants' opposition was due November 3, 2026.[30] They did not file one.

## JURISDICTION, VENUE, AND SERVICE

Before entering default judgment, a court must determine whether it has subject-matter jurisdiction over the action and personal jurisdiction over the defendant. *In re Tuli*, 172 F.3d 707, 712–13 (9th Cir. 1999). A court also must ensure the adequacy of service on the defendant. *Timbuktu Educ. v. Alkaraween Islamic Bookstore*, No. C 06–03025 JSW, 2007 WL 1544790, at *2 (N.D. Cal. May 25, 2007).

First, the court has federal-question jurisdiction over the plaintiffs' claim under the Securities Exchange Act of 1934 and supplemental jurisdiction over their state-law claims, including the claim under § 496, because all the claims arise from the same scheme. 28 U.S.C. §§ 1331,

---

[26] *Id.* at 8, 12–13.

[27] Pls.' Update – ECF No. 209 at 2; Minute Entry – ECF No. 212.

[28] Order – ECF No. 213 at 4–5; Entry of Default – ECF No. 214.

[29] Mot. – ECF No. 215 at 2, 7–8. The court can decide the dispute without a hearing. Civil L.R. 7-1(b).

[30] Order – ECF No. 213 at 5.

United States District Court
Northern District of California

1367(a); 15 U.S.C. § 78aa. All parties consented to magistrate-judge jurisdiction. 28 U.S.C. § 636(c).[31]

Second, the court has personal jurisdiction over the defendants, and venue is proper. Hu and Li live in this district, Patten Holding has its principal place of business here, and a substantial part of the events occurred here. *Id.* § 1391(b)(2).[32] The defendants appeared and moved to dismiss without contesting personal jurisdiction, venue, or service, and they later conceded personal jurisdiction in their answer.[33] Any objection is waived. Fed. R. Civ. P. 12(h)(1).

Third, the defendants were served. The plaintiffs served Patten Holding by delivering the summons and complaint to its registered agent, and they served Hu and Li through their counsel.[34] Because the defendants appeared, they were entitled to written notice of the motion for default judgment at least seven days before the hearing. Fed. R. Civ. P. 55(b)(2). They had it. The court conditioned their counsel's withdrawal on his continuing to accept service for them, and he filed proof that he served them with the motion.[35] Hu and Li are not minors or incompetent persons.[36]

## ANALYSIS

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for — and the court may grant — a default judgment against a defendant who failed to plead or otherwise defend an action. After entry of default, the complaint's well-pleaded allegations about liability are taken as true, but the plaintiff must prove damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). That is so when, as here, the default is a sanction for disobeying discovery orders. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (default entered as a discovery sanction); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414–15 (9th Cir. 1990) (same). "A

[31] Consents – ECF Nos. 9, 21, 24, 29, 39–40.

[32] Compl. – ECF No. 1 at 4–5 (¶¶ 10–11, 13), 7 (¶ 21).

[33] Order – ECF No. 67 at 1–2 (grounds for the motion); Answer – ECF No. 78 at 3 (¶ 20).

[34] Executed Summons – ECF No. 10 at 3; Proof of Service – ECF No. 26.

[35] Orders – ECF Nos. 213 at 5, 216; Certificate of Service – ECF No. 217.

[36] Derrick Decl. – ECF No. 215-1 at 2 (¶ 2).

United States District Court
Northern District of California

default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The decision to grant or deny a default judgment lies within the court's discretion. *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986).

In exercising that discretion, the court considers seven factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake, (5) the possibility of a dispute about material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

**1. The *Eitel* Factors**

The *Eitel* factors favor default judgment. Four of them follow from what the court has already found. The defendants willfully disobeyed five discovery orders, told the court that they would not comply, and ignored a final warning, and their conduct denied the plaintiffs the records that would show where the money went.[37] Without a judgment, the plaintiffs have no other recourse (the first factor). *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). No material fact is in dispute (the fifth factor): the default establishes the complaint's allegations, the defendants may not offer documents that they did not produce, and they did not oppose the motion.[38] The default resulted from the deliberate choices of represented parties, not from excusable neglect (the sixth factor). And although the federal rules favor decisions on the merits (the seventh factor), the defendants' conduct made one "impractical, if not impossible." *Id.*

The second and third factors, the merits of the claim and the sufficiency of the complaint, require allegations that state a claim on which the plaintiffs may recover. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). The complaint has them, as the next section explains.

The fourth factor considers the sum of money at stake. *Eitel*, 782 F.2d at 1471–72. A large sum can support default judgment when it is tailored to the defendant's specific misconduct and

[37] Orders – ECF Nos. 206 at 2, 8–9, 213 at 4.

[38] Order – ECF No. 206 at 12.

United States District Court
Northern District of California

supported by evidence. *Bd. of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Superhall Mech., Inc.*, No. C-10-2212 EMC, 2011 WL 2600898, at *2–3 (N.D. Cal. June 30, 2011). The sum here is large. But it is tied to the transfers that the bank records show, less the amounts that the plaintiffs credit, multiplied as the statute directs.

**2. The Violation of Section 496(a)**

The plaintiffs seek judgment on their claim for receiving stolen property. Section 496(a) makes it a crime to receive property "that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained," or to conceal or withhold the property from its owner with that knowledge. Cal. Penal Code § 496(a). A violation has three elements: the property was stolen or obtained in a manner constituting theft, the defendant knew that it was, and the defendant received or possessed it. *Switzer v. Wood*, 35 Cal. App. 5th 116, 126 (2019). Theft includes defrauding a person of money "by any false or fraudulent representation or pretense." Cal. Penal Code § 484(a); *Bell v. Feibush*, 212 Cal. App. 4th 1041, 1048 (2013). And the statute reaches the thief as well as the person who receives from the thief: "[a] principal in the actual theft of the property may be convicted pursuant to this section." Cal. Penal Code § 496(a).

Fraud amounts to theft only if the plaintiff establishes "criminal intent on the part of the defendant beyond mere proof of nonperformance or actual falsity," a requirement that keeps ordinary commercial disputes from becoming theft cases. *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 361–62 (2022) (cleaned up).

The complaint's allegations, which the default establishes, satisfy each element. First, the defendants obtained the plaintiffs' money by theft. Hu induced the investment with a valuation, an auditor's report, and a due-diligence report that he attributed to PricewaterhouseCoopers, an accounting firm, and a law firm. All three were forgeries. He told the plaintiffs that their money was going into escrow when it was going into an account that he controlled. To satisfy the condition for releasing the escrow, he then delivered two agreements bearing the forged signatures of Stanford

officials. Relying on these representations, the plaintiffs parted with $35,490,000.[39] These are not broken promises or optimistic projections. A person who uses a forged auditor's report and a forged university president's signature to obtain money acts with criminal intent. The court held at the pleadings stage that the complaint "plausibly alleges a scheme that was entirely fraudulent."[40]

Second, each defendant knew how the money was obtained and received it. Hu devised the scheme. Patten Holding, the counterparty to the stock-purchase agreements, is his alter ego.[41] The money went to an account that Hu controlled and that he described to his banker as "[o]ur company account."[42] Li knew that Hu and Patten Holding were defrauding the plaintiffs, knew that the funds were obtained by theft, and received them into accounts under her control.[43] The specific allegations bear this out. She and Hu opened the corporate Chase accounts without authority. She pressed East West Bank to release Bluestone's money to the Chase account on which she was the signer, and $27,300,000 passed through that account on its way to Hu's. She later withdrew $150,000 from it herself.[44] And the court has already held that these allegations state claims against Li for receiving stolen property and for conspiring in and aiding the fraud.[45] The Chase records corroborate them. The defendants violated § 496(a).

## 3. Damages

### 3.1 Actual Damages

The plaintiffs proved actual damages of $24,280,000. No hearing is needed when "the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d

---

[39] Compl. – ECF No. 1 at 10–17 (¶¶ 28–42), 33 (¶ 68), 37–41 (¶¶ 79–86), 53 (¶ 129).

[40] Order – ECF No. 67 at 11.

[41] Compl. – ECF No. 1 at 48–49 (¶¶ 108–10), 56 (¶ 148); Order – ECF No. 67 at 12–13.

[42] Compl. – ECF No. 1 at 37 (¶ 79); Emails, Ex. 5 to Derrick Decl. – ECF No. 215-1 at 26.

[43] Compl. – ECF No. 1 at 56 (¶¶ 146–47), 57 (¶ 158).

[44] *Id.* at 28 (¶ 59), 36 (¶ 77), 44 (¶ 92), 46–47 (¶ 102), 57–58 (¶ 160); Chase Statements, Exs. 3, 6 to Derrick Decl. – ECF No. 215-1 at 13, 28.

[45] Order – ECF No. 67 at 10–11. The court does not reach the plaintiffs' alternative request for contract damages.

United States District Court
Northern District of California

1154, 1161 (9th Cir. 1981). The amounts here appear on the face of Chase's records. The account that Hu controlled received $27,300,000 from Bluestone and $8,190,000 from WEAI on July 16, 2021, and Li withdrew $150,000 from Bluestone's account on September 27, 2023, for a total of $35,640,000.[46] From that total, the plaintiffs subtract the $7,110,000 deposited into WEAI's account in April 2023 and the $4,250,000 wired to Chan in February 2023.[47] The result is $24,280,000. The measure is conservative: it counts only transfers that appear on the face of the bank records, credits both amounts in full, and omits interest and consequential losses.[48]

### 3.2 Treble Damages

Section 496(c) provides that "[a]ny person who has been injured by a violation of subdivision (a) . . . may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." Cal. Penal Code § 496(c). A plaintiff "may recover treble damages and attorney's fees under section 496(c) when property has been obtained in any manner constituting theft." *Siry*, 13 Cal. 5th at 361 (treble damages available against defendants who diverted partnership funds by fraud and whose default was entered as a terminating sanction for discovery misconduct). No criminal conviction is required. *Bell*, 212 Cal. App. 4th at 1046.

The plaintiffs are entitled to treble damages. The defendants violated § 496(a), and the plaintiffs were injured by the violation: the money was theirs. The defendants' one response on that point was that Patten Holding owns Bluestone and WEAI. The sanctions order forecloses it by establishing that the plaintiffs own and control both companies.[49] The statute then sets the recovery at three times the actual damages. The plaintiffs' alternative request for contract damages assumes that the court might decline to treble. The statute's text does not suggest that discretion, and the record gives

---

[46] Chase Statements, Exs. 4, 6 to Derrick Decl. – ECF No. 215-1 at 18–19, 28; Compl. – ECF No. 1 at 44 (¶ 92).

[47] Chase Statement, Ex. 7 to Derrick Decl. – ECF No. 215-1 at 34; Disclosure of Transfer of Funds – ECF No. 211 at 1–2.

[48] Mot. – ECF No. 215 at 16.

[49] Order – ECF No. 206 at 12.

no reason to exercise it in the defendants' favor. They took more than $35 million with forged documents. Three times $24,280,000 is $72,840,000.

Rule 54(c) does not limit the award. The complaint demands treble damages under § 496 and alleges an investment of more than $35 million.[50] The rule does not bar an award of actual damages when the complaint sought damages in an amount to be proved at trial. *AirDoctor, LLC v. Xiamen Qichuang Trade Co.*, 134 F.4th 552, 555 (9th Cir. 2025). And the award is less than three times the loss that the complaint alleges.

### 3.3 Joint and Several Liability

The defendants are jointly and severally liable for the award. The claim is pleaded against all three, and the default establishes that each knowingly received the stolen funds.[51] Hu and Patten Holding are alter egos. Li's liability extends to the full amount for two reasons. First, the default establishes that she agreed to the scheme and substantially assisted it.[52] A conspirator is liable for all the damages that the conspiracy causes. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994). Second, the bank records tie her to more than the net loss: $27,300,000 of the stolen funds passed through the Bluestone account that she controlled, and she withdrew another $150,000 from it.

## 4. Final Judgment

The plaintiffs also ask for entry of final judgment under Rule 54(b).[53] That rule allows a final judgment "as to one or more, but fewer than all, claims or parties." Fed. R. Civ. P. 54(b). When an action involves multiple parties, the court may direct entry of a final judgment as to fewer than all of them "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). The court asks whether the judgment is final as to the parties that it covers and then

---

[50] Compl. – ECF No. 1 at 2 (¶ 1), 56 (¶ 149), 64 (Prayer ¶ C).

[51] *Id.* at 56 (¶¶ 144–49).

[52] *Id.* at 57–58 (¶¶ 158–60).

[53] Proposed Order – ECF No. 215-2 at 2.



United States District Court
Northern District of California

whether any just reason for delay exists, considering judicial administrative interests and the equities. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980).

No claim remains against any other defendant. The plaintiffs dismissed their claims against Patten University, LLC, and William Sawyer.[54] On October 23, 2025, the court dismissed the claims against Chase and its employee Andrew Babes with leave to amend and the claims against Scott Ethan Victor for insufficient service of process.[55] More than a year has passed, and the plaintiffs have not amended the complaint or served Victor. When a plaintiff does not take the opportunity to amend, the court may convert the dismissal into a final one. *Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005). The court does so. Because a dismissal for failure to state a claim is a judgment on the merits, the dismissal of the claims against Chase and Babes is with prejudice. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981). The dismissal of the claims against Victor was for insufficient service, not on the merits, and is without prejudice. The judgment therefore resolves the entire case.

Even if the claim against Victor were live, the requirements for entry of judgment under Rule 54(b) are met. The judgment resolves all the plaintiffs' claims against Hu, Li, and Patten Holding. And there is no just reason for delay. The claim under § 496 is pleaded only against the three defendants in default, so nothing that remains in the case can produce an inconsistent result or a second appeal on the same issues. The equities favor the plaintiffs, who lost their money in 2021.

## CONCLUSION

The court grants the motion for default judgment. It will enter a separate judgment in favor of Bluestone Investment Inc., World Education Association, Inc., Irene Chan, and Lishan Zhang and against Qizhong Hu, Jingling Li, and Patten Holding LLC, jointly and severally, in the amount of $72,840,000.

---

[54] Stipulation of Dismissal – ECF No. 73; Notice of Voluntary Dismissal – ECF No. 74.

[55] Order – ECF No. 67 at 19.

The claims against JPMorgan Chase Bank, N.A., and Andrew Babes are dismissed with prejudice, and the claims against Scott Ethan Victor are dismissed without prejudice. The dismissal of Victor is conditional: if the plaintiffs certify to the court within 180 days of this order that it has effected service on Victor, then the dismissal against him will stand vacated, and the case against him will be restored to the calendar without further payment of a filing fee. If no certification is filed, then after 180 days, the dismissal against Victor will remain without prejudice.

This resolves ECF No. 215.

**IT IS SO ORDERED.**

Dated: November 14, 2026

LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California